Case number 14-1075. Mr. Nelson, you want to reserve five minutes for rebuttal? Yes, Your Honor. Just give us one minute. Yes, Your Honor. Okay. May it please the Court. This appeal turns on whether the path mob has reasonably defined the term name of a person, whether the term name of a person is functional in the context of the invention, and whether the difference between a name and the prior art's unique personal identification code meet the requirements for non-obviousness. If we disagree with you on the third point, we don't even need to reach the first two, do we? Yes, Your Honor, I think that's correct. I think I have to win on all three. Okay. Go ahead. The Patent Office defined the name of the person unreasonably broad to mean any type of personal identification, whether it's letters, numbers, or combinations.  That's at the heart of the unreasonableness of the Patent Office definition. The issue isn't whether a name can have letters, numbers, and things. It's whether a person knows his name. The prior art teaches a unique personal identification code, which is generated by a computer, and the first time a person is going to see it is when he receives an email or a direct mail that's got this personal identification code embedded in a computer website URL. That person will never recognize that as a name. You're making this argument because you argue that one of the points of the invention is that by seeing their own name that the user will be compelled to click and go forward with the process. That's correct, Your Honor. That was the motivation for putting a name in a URL is to entice the person to which the URL was addressed. I mean, this is kind of a marketing campaign. You get postcards, you get mailers trying to entice you to go to a corporation's website. The mailer will have a URL in it. The URL links to the... But the ultimate goal is to get back a personalized webpage. And the ultimate goal is to convince the person to enter the URL into the computer, and the computer will generate a webpage that is customized. Right. You want them to be inspired to click on the link. Maybe this is a little Orwellian, but in this day and age, if I see a set of numbers that come up that are associated with me, like my birth date, or even a series of numbers that are generally used as a code, that would do the same thing, wouldn't it? It may entice you, but that still wouldn't be your name. You could see your social security code in a URL, and that may cause you concern, but whatever, it wouldn't say, I would need to figure that out. That's not covered by the claim. The claim requires a name, and a name is not unique. And so that's the point of novelty, I guess. I wouldn't use that kind of phrasing, but that's the unique thing about this invention. That's why it's unique, and that's why it's functional. A name is unique from a, pardon, but the unique personal identification code, because there, my name is Jeff, there could be a lot of Jeffs in the room, but if I have a personal, but there will only be one person with my social security number. If the computer receives a URL that's got Jeff in it, it's not going to know which Jeff in its database I'm trying to access. With the invention, it doesn't matter. All the computer needs to know is that a guy called Jeff entered the URL. There's a Jeff in the database that is supposed to get a promotional offer, and so the computer generates a customized web page that, for example, may say, Jeff, buy fishing rods. This is one thing I'm trying to understand. One of the scary things I found out when I was being confirmed is there's a lot of people with the name Kate O'Malley, and not all of them have great backgrounds. So I click on Kate O'Malley, and if there's a Kate O'Malley in the database, it's going to generate a personal web page for me, but there's no, it might not have anything to do with me, though, right? Correct. This is marketing. This is just to get you to buy something. It may want the computer system, if it succeeds, and you enter the web page, and you get this customized web page that says, buy fishing rods, and you go, I'll buy a fishing rod, there may be subsequent steps where you enter your credit card and buy things, at which point the computer will know exactly which Judge O'Malley it is. But that's not occurring when it gets that URL that just says O'Malley. It's just checking to see, is there an O'Malley in our database that is supposed to get a promotional offer? The answer is yes. It kicks back as a customized web page. Your friends on the other side are going to argue that what's really functional here is the fact that there's some suffix that's tied to the user, or at least tied to some characteristic of the user. So it doesn't matter whether that suffix is in letters, or in numbers, or some other kind of characters. What is your response to that? Twofold. First, we have never made and do not make the argument that it matters whether it's letters, numbers, other things. The name is something that you're known by. Most people's names have letters. I assume there are some that don't. That's not the issue. The issue is, does the person recognize it so that they'll be enticed to enter the URL? The second issue is that a name is not unique, and that the primary reference, Shane, discloses a system where a computer generates a unique personal identification code. That code links to data records that are specific to one human. So the reference is going to give a much more personalized offer. Your system is still going to give an offer. You wouldn't be sending a mailer to somebody with a name. It's always going to find a name that matches that in the system. It might be the wrong person, but it's still going to generate some kind of personalized offer. It will do that, but it does that. Actually, that personalized offer will be very, what Shane says, be very personalized to that one person, because Shane actually tracks how many times you enter the website. So Shane not only knows who you are, but how many times you've been there. So you may get a new customized webpage each time you enter. So there is some benefits to having a unique personal identification code. It allows the computer on the webpage site to know exactly who you are. I still don't understand why that doesn't make your invention obvious. Because isn't the basic nature of this is you get a URL, either through an email or a mailer, you enter it in, and you get some kind of offer based upon some kind of personalization. The prior art does it better than yours. It's better in some respects. More personalized. Better is not really the issue. It's just different. But what's different? If that's the invention, then yours does the same thing. No. Shane won't work with a name, because the names are not unique. If you send a URL in without a Shane-specifically format and computer-generated unique personal identification, Shane will just bounce back and say non-authorized or something. It won't respond in any respect. This invention actually has the advantages. It doesn't care if it knows you or not. It just sees a name, a name that's in the database, and then it gives you a promotional offer. And so you can... Alright, so you're not disputing the combining of Shane and Scroteney. No. Below, we did make some arguments on that regard. We no longer do. So the only question is whether it would be obvious to go from Shane's unique personal identifier to a less unique personal identifier. Yes, that's the issue on appeal on the differences. And the board did kind of make a cursory finding, and said that, well, it's a difference, but it's not enough. Without explaining why, and not going in and seeing actually the different function and the way Shane operates, where it requires a unique personal identifier, and this invention, which doesn't require a unique personal identifier, it just requires a name. The application even mentions that the name may come back and there may be a subgroup of customers with the same name, and the invention still will handle it. The application in the background talks about the difficulty in tracking and maintaining web pages for each individual customer, and so that's two troubles. This application was filed in 2002, so it's a long time ago. And so it says, you know, we can take what would normally result in a kind of failure operation. In other words, you get a URL, the computer gets a URL that it doesn't recognize, and would normally generate an error, and the application says, instead of generating an error, let's check to see, let's generate a promotion and send it back to the person, and then to make it more enticing, we'll match, put a name in the URL, match the name with our database, and then generate a customized web page. At the end of the day, though, you end up with a personalized web page. Yes. Under both. So it seems to me that what you say is different about the invention, or what makes this an invention, is enticement. But that's an aspiration. I mean, you haven't claimed an aspiration. You haven't claimed this goal. Whether you use a personal identifier or a name, it has the same function, doesn't it? No, no. I'm not basing it on the aspiration as... I recognize that aspiration by itself was the motivation which caused the inventors to use a name in the URL, and it also was for the person receiving the postcard that may have caused them to do it. But for patentability, I can't argue functionality of that, and I can't argue difference between the prior argument. What I'm arguing is that for Shane to work the way it's described in that patent, it has to have a unique personal identification code. If it doesn't have a unique personal identification code, it can't access its records, it doesn't know who it's talking to, and the computer wants to know who it's talking to. You're in your rebuttal time. Yes. And this invention doesn't care of the particular individual individual who has entered the URL, it just wants to know the person's name. I'll reserve the rest of the time to reflect. May it please the Court. Worth's claim recites compiling a list of potential customers, sending to each of them a postcard with a URL with an individualized suffix that's specific to them where they receive a custom web page when they enter that URL, and all of those things, as Worth concedes, are disclosed in the prior art. And so the only thing we're arguing about here is whether the prior art renders unpatentable a name. And the board had three independent reasons. Unpatentable? I mean, that's not the only argument. I guess the other argument is whether it would be obvious. Unpatentability is a different answer. Right, whether it renders it obvious based on the disclosure of the unique personal identifier. Let me talk about this printed matter doctrine, because for some reason we're seeing this all over the place now. I had seen it in three and a half years, and now most of the cases coming out of the board have some reference to the printed matter doctrine. And I'm not sure it's really applied properly here. First of all, would you argue that in Shane the suffix that's used is not functional? It is not functionally related to the rest of the steps of the claim. And by that I mean whether it's a name or a number, it is used to look up the person's record in the database and spit out a website to them that is unique to them, that is customary. For instance, in Shane you've got a unique identifier number that gives them a web page that is directly tied to that particular person. How is that not a function that's related to the substrate, to the activity that the software is performing? Well, the question that we're looking at is in the claim itself. So in the claim is the printed matter that is claimed functionally related to the rest of the steps of the claim? So the question is here, is the name... But the printed matter is the URL, and the URL is certainly functional. It is definitely functional. But is the text of it, is the content of it, functionally related to the rest of the claim? And here, so the content of the suffix of the URL is the name, and that's where the distinction is between the preference... Right, and the function is to look up that name in the database. Exactly. How is that not a function? It's a function, but the difference is... It's almost like you think it's because there are words written in the claim that somehow renders it unpatentable. I don't understand that. It's not that it renders it unpatentable. It's that that can't be the point of distinction between the prior art and the claim. That doesn't sound like the printed matter doctrine. That just sounds like it's obvious, because there's no distinction between the personal identifier and the prior art, which may be numbers, and a personal identifier and the patent, which is a name. I don't understand why that's the printed matter doctrine. The printed matter doctrine is an obviousness doctrine, as well as an anticipation doctrine. It's used when you have a reference, and the distinction between the reference and the claim is matter. It's printed matter, and the question is, is the content of the printed matter functionally related to that? The printed matter doctrine, the kind of circumstances in which you see the printed matter doctrine properly applied, are a situation where you have an apparatus claim, and then you later try to patent the instructions for that apparatus. So there's no distinction between the fact that you've claimed this apparatus, and now you might be able to get a copyright on it, but you can't get a patent on it, because that's all it is, is printed matter. That's not what this is. This is actually use of, yes, something that happens to be printed, but it performs the underlying function. And the instructions is one example. This court has also applied the printed matter doctrine. For example, in In Re Chau, that's the case with a tumbler lock, and the printed matter was the letters printed on the tumbler lock, so you could more easily remember your code. It gave you a wild card as an option. And this court held that the option of a wild card, the content of the letters printed on the tumbler lock, is printed matter that is not functionally related to the function of the tumbler lock itself, and therefore can't see the distinction that renders the claim patentable. Let me ask that in what I think, at least I'm trying to get at a different way. Set aside the prior art here. If we were just looking at the words patent, the fact that the name is printed as part of the URL wouldn't be a basis for rejection, would it? Because it obviously has a function. That's right. It has to be looked at in light of the prior art that you're looking at. And the distinction, it applies when the distinction between the prior art and the claim. Frankly, I just don't understand why you're not arguing that the prior art references render it obvious because there's no distinction between a personal identifier and a name. Yeah, but the printed matter doctrine seems a much narrower and different thing. It's like when you have something that's patented and then you just add some kind of writing to it that doesn't change the function. But the URL is intrinsic to the function. The URL is functional, yes. It's that the content of the URL here is directing you to the same thing, regardless of what it says. It's not, because here it's directing you to a database of names, which can only then pull up names, whereas the other URL directs you to a database with a specific identifier that pulls up the identity. And there are different functions and different results. They both direct you to a database of names in which it pulls up your name and displays it on your customized web page. So how is that not functional? I'm looking at the examination guidelines for computer-related inventions published by the PTO, and under non-functional descriptive material, which we're talking about, it says, Descriptive material that cannot exhibit any functional interrelationship with the way in which computing processes are performed does not constitute a statutory process, blah, blah. It seems to me that your argument is conceding that there is a functional interrelationship with the name and the way that the system performs. There is a function to the URL, but the content of what is written in that suffix, regardless of whether it's a name or a series of numbers or a string of other characters, it will direct you to the person's entry in the database and look up that person, the custom website that is designed for that person. It's going to direct you to Joe and not Betty, correct? That's right. How is that not functional? It's functional, but you could also have your number be 123 and it will direct you to Joe and not Betty. So if Joe gets the postcard that has 123 as the suffix to the URL and he types in his URL and it says 123, his custom webpage for Joe will show up. And it all operates in exactly the same way, and so the distinction here is both. I'm arguing all three points here. It is obvious because there is really no distinction, but also because the content of that suffix is printed matter that can't form the basis of it. I think you can get the gist that we're not buying the printed matter, Doctor, so let's move on to obviousness. So what is your response to the argument that Shane actually would teach away from use of a name because it so emphasizes the importance of having the unique personal identifier? The name really isn't. The way that WIRTH operates relies on the name being unique. So let me explain that. In WIRTH, the claim says it recites a method of generating a custom webpage specific to a person. So when a person gets their URL with their name at the end and they go to that website, it's specific to them. So the system doesn't even allow for two people with the same name. If two people with the same name get the same URL and go to their website, they're going to get the same website. It's not going to be custom to one of those people. So the way WIRTH operates relies on the uniqueness of names, just like Shane. They recognize that you could go in and the database could have more than one person with the same name. It could, but if their database wants to present something custom to that person, they would have to send a URL that's somehow different for the two different people. So two people with the name Mollie Silfen get their postcards. Their URLs would have to be different. So the Mollie Silfen suffix, one of them would have to get Mollie R. Silfen and the other person would have to get Mollie Silfen. But if you get a webpage, one Mollie has, it's a sail on canoes, and the other Mollie gets a sail on humidifiers. I mean, at that point, what difference does it make? The system is WIRTH. It's made an offer. Right, and the only way to have the two different Mollies get two different offers is to have them have different suffixes to their URLs. Let's say they get the same offer. If they get the same offer and it's because they looked up the same URL, then the method isn't operating as the claim requires, which is a method of generating a custom webpage specific to a person. It has to be specific to the person who is typing in the URL that they receive. So even if the person, the people, there are two people that have the same names, there's something else in the URL that's going to be a distinguishing identifier that will direct them to personalized pages. There can be, sure. Well, I think you said there has to be, right? There has to be, right. So even if your name is exactly the same, it's the same first name, same middle initial, same thing, there's going to be something, you know, maybe, because the URLs just aren't a company name, there's a string, there's going to be something that's going to distinguish between two people with identical names for this to work. That's right. There's got to be something in the suffix that makes it unique. So that makes it identical to what Shane discloses, which is a unique personal identifier. What's your response to the argument that Shane wouldn't actually work with a name? I disagree, Your Honor. Shane is, so WIRTH is arguing that the name doesn't have any particular format and Shane has a particular format. The name does actually have a particular format in WIRTH's claim, because as we discussed, you have to enter your URL exactly as it is sent to you in order to get your custom offer. And Shane operates exactly the same way. You have to enter exactly your unique personal identifier in order to get your custom offer. And I'd like to just respond to one other point that WIRTH is making, that the name makes you more likely to go to your unique web page and that somehow distinguishes the two disclosures. This court in King explained that that cannot be the basis for patentability, or non-obviousness, that making a person more likely to use the method cannot render that claim patentable based on that particular difference. And if the court has no further questions, I will yield the remainder of my time. I would like to respond to the argument that WIRTH's claims require a unique person. It doesn't. This is the first time I've heard this argument. It's not in any briefs, it wasn't by the examiner, and it certainly wasn't by the board. The patent application at Record A-90 says that when you do this matching between the name in the URL and the database, it will show the recipient's name, which may be, and I'm quoting, unique only to that customer or a subgroup of customers included in a computer file. The reference subgroup of customers is a recognition that you could have multiple people with the same name. I think her argument is that the preamble on Claim 1, specific to a person accessing the website, somehow limits the claim. And I think she's also referring, if you go down to the second to the last element, it says promotional office for the person contacting the first device. What they're reading into the claims is that custom web page is a unique custom web page. It's certainly a custom web page for the person entering the URL, because that's the person sitting at the computer and that's the person who's going to see the web page that comes up and says, you know, Jeff, buy a fishing rod. There is nothing in the claim that says that there is only one Jeff, or that the custom web page has to be unique to that person. And really that gets to the heart of our argument. This invention is a way to get people to enter a URL and have the computer generate a custom response that doesn't require the computer to go and say, you know, which Jeff is it, you know, get all their data, how many times has it come in. It just generates that first response with a promotion and hopefully gets the person to interact more with the computer. How do you respond to the argument that King would basically foreclose your argument because King says that just because you motivate someone or someone's mental processes does not allow you to say that that point wouldn't be obvious. I'm not relying on the motivation for patentability. I am pointing out that motivation is what caused this invention in the first place. The inventor realized that putting a person's name in the URL would make it more exciting or interesting to do it. For patentability purposes, the law does say motivation isn't usually relied on. What I'm saying, the difference we're relying on here, when we get down to the issue of difference, is Shane will not work unless that URL is unique to that person. The claims don't require uniqueness. In fact, the claims seem to go towards just having a name in the suffix of the URL and that name could match several people. They're performing two different functions in the computer backend. One is to identify the records of a particular person.  No, under the worst system, the claims require a matching of the name in the URL to something in database. So there is a check. Shane requires much more preciseness. Really, you're not going to get some kind of offer if you click on this URL? Why would the email or the mailer been sent out with the URL if when you click on it you're not going to get something? I see my time has expired. From a marketing standpoint, you may be exactly right. But the claims require that there be a matching step between the name in the URL and the database. I guess the claims don't say what happens if there's no match, but the claims do say that you do a match. Presumably, when you have a database and you say, we think these 50 people might be interested in this product, we'll send this out with their names, and when they click on it, it's going to match to that database and put into that product. I can't imagine that this would ever work where somebody clicks on their name based upon a promotional email and you get a no good link message. That doesn't seem what the claim anticipates. Yes. I think practically you're thinking like that. The only way the name gets in the URL is if it's printed there by the system, and then so when the URL is properly entered, the name's already there. So you have to generate it from the database. Correct. OK. You want to finish up? Thank you. OK. Great.